THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CRAIG CARRARO *et al.*, Defendants-Appellants.

Fourth District   No. 14839

Opinion filed January 4, 1979.

Richard J. Wilson and Jeff Justice, both of State Appellate Defender's Office, and Edward Green, both of Springfield, for appellants.

C. Joseph Cavanagh, State's Attorney, of Springfield (Robert C. Perry and Denise M. Paul, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

The defendants, Craig Carraro and William Gray, were jointly represented by Bruce Beeman and were convicted, following a trial without a jury, of battery and criminal damage to property in excess of $150. Gray was sentenced to concurrent terms of 1 to 2 years' imprisonment on the charge of criminal damage to property and 6 months for the battery conviction. Carraro was sentenced to concurrent terms of 2 years' probation and 60 days' incarceration on each count. Both defendants appeal their convictions.

At the defendants' joint trial, the complaining witness, John Duckworth, testified that on July 25, 1977, he was driving on Maple Avenue in Springfield, Illinois. After coming to a stop, at an intersection, the driver of a car in front of his, whom Duckworth identified as Carraro, got out of his car and walked back to Duckworth's vehicle. Carraro complained to Duckworth about his stopping too close to his (Carraro's)

car. Duckworth responded that he wasn't near Carraro's vehicle. A heated discussion ensued until finally, according to Duckworth, Carraro began punching Duckworth through the open window of his car. At about the same time Gray, a passenger in Carraro's car, came back to Duckworth's vehicle and began spitting in Duckworth's face.

At that point, Duckworth attempted to leave, by pulling his car around Carraro's and into a parking lot. After finding his path blocked, he decided to back out of the lot in the direction from whence he came. Duckworth admitted he was frightened and that, as he rapidly backed up, in the direction of Carraro and Gray, who were standing in the street, his tires squealed. In this process, his car stalled and he was unable to restart it. Carraro and Gray then came up to his car and one began to kick the left side of the car and the other kicked the front end. Thereafter, Duckworth left his car and began walking towards the Coble Animal Hospital to telephone the police and, while doing so, he was attacked by one of the defendants and, thereafter, both defendants assaulted and kicked him.

Rex Coble testified he saw both defendants attack Duckworth outside of the clinic and both kick Duckworth's car as they left the scene. Frank Coble saw only one of the defendants kick Duckworth and the other one kick the car. He could not, however, identify which defendant did what particular act.

Two other witnesses, Dave Colburn and Steve Clutts, testified, as had Frank Coble, that they saw one of the defendants kick Duckworth and the other kick his car. These two witnesses, were likewise unable to conclusively identify which defendant had kicked Duckworth and which one had kicked the car.

Detective Dennis Dedlak, who was first dispatched to the scene, testified that Carraro and Gray returned to the scene a short time after he arrived and appeared ready to fight. According to Sedlak and other witnesses, both men used abusive language and threatened to "get even" with the witnesses. After the defendants were placed under arrest and read their rights, Carraro allegedly admitted to Sedlak that he had kicked Duckworth's car and had physical contact with him. Carraro claimed that the reason the incident had occurred was that Duckworth had pulled up too close to his newly painted car. Sedlak also testified that Gray made admissions substantially similar to Carraro's. Detective Oren Dalby, who was present when Sedlak questioned the defendants, corroborated Sedlak's testimony concerning Carraro's admissions, but he could not recall whether Gray had made similar statements.

Both defendants testified on their own behalf. Carraro testified that Duckworth drove up behind his car, skidding and lurching his car forward within inches of Carraro's. Carraro got out of his car, walked

back to Duckworth, and told him to "cool it" because he had just had his car painted. According to Carraro, Duckworth swung his arm up at him and he knocked it down. Duckworth then pulled his car out and began driving towards Carraro. To avoid being hit, Carraro kicked himself away from Duckworth's car, denting the door. Gray, who according to Carraro had remained in his car, then got out and came over to see if he (Carraro) needed any help.

Carraro testified that, as Duckworth backed out of the parking lot, he believed that Duckworth was trying to run them down. He claimed he followed Duckworth over to the animal clinic to ask him why he had tried to run into them. He stated that Duckworth began to wave his arms and kick and Carraro responded by striking Duckworth in "self-defense." Carraro also testified that Gray took no part in this altercation. Finally, during direct examination, defense counsel elicited testimony from Carraro, that as he and Gray were leaving the scene, Gray walked over to Duckworth's car and kicked the grill on the front end.

Following Carraro's testimony, Gray testified and corroborated Carraro with regard to the manner in which Duckworth drove up behind Carraro's vehicle. Gray claimed, consistent with Carraro's testimony, that he had remained in Carraro's car and only got out after Duckworth had pulled into the parking lot. Gray further stated that as Duckworth pulled out and drove around Carraro's car, he saw Carraro fall back out of the path of Duckworth's car.

Gray corroborated Carraro's testimony regarding two other points: the manner in which Duckworth backed out of the parking lot, almost hitting them; and that Duckworth initiated the physical altercation outside the animal clinic. Gray similarly denied that he took part in this confrontation between Carraro and Duckworth. Finally, defense counsel elicited an admission by Gray that, as he and Carraro were leaving the scene, he walked over to Duckworth's car and kicked the grill. Gray stated that he had done so because he was extremely upset with Duckworth, who he felt had tried to run him down. Gray asserted, however, that this was the only damage he caused to Duckworth's vehicle and that the kick had only resulted in denting a few chrome strips on the grill.

On appeal, both defendants initially contend that the evidence failed to establish beyond a reasonable doubt that each defendant was accountable for the acts of the other in damaging Duckworth's vehicle. Thus, they argue the evidence concerning the total amount of damage to the automobile was insufficient to convict either of felony criminal damage to property. Both essentially claim that the incident in question involved two distinct, separate episodes and that each was merely present when the other acted to cause damage to the automobile. For example,

Gray acknowledged that, without justification, he kicked the front grill area of the car. However, he contends that this was the only damage which he caused. On the other hand, he asserts that Carraro acted entirely independently of Gray, when he kicked the side of Duckworth's car, supposedly in self defense. Both defendants claim that Gray remained in Carraro's automobile, during the first incident, when Carraro kicked against the vehicle to avoid being hit. Similarly, the defendants' testimony supported Carraro's argument that Carraro had no real connection with Gray's act.

■■ ■ In order to establish guilt under the theory of accountability, the State must prove that: (1) the defendant solicited, aided, abetted, agreed, or attempted to aid the other in the planning or commission of the offense; (2) this participation must have taken place either before or during the commission of the offense; and (3) it must have been with the concurrent specific intent to promote or facilitate the commission of the offense. (*People v. Wright* (1976), 43 Ill. App. 3d 458, 357 N.E.2d 224; *People v. Tillman* (1971), 130 Ill. App. 2d 743, 265 N.E.2d 904.) With regard to this question, it is well established that mere presence alone, at the scene of a crime, is not enough to prove accountability. (*People v. Owens* (1975), 32 Ill. App. 3d 893, 337 N.E.2d 60.) As stated above, both defendants claim they were merely present when the other acted and, therefore, are not guilty of aiding or abetting each other.

■■ In direct contrast to the defendants' version of the occurrence, is the testimony of the complainant. Duckworth claimed that, with regard to the first half of the incident, both defendants assaulted him, Carraro by punching him and Gray by spitting at him. He further testified that *both* Carraro and Gray kicked his car after it had stalled and come to a stop and while he was still in it. This testimony, thus, contradicted Carraro's claim of self-defense. Additionally, there were the admissions by Carraro and Gray, according to Detective Sedlak, that they had physical contact with Duckworth and had kicked his car. Based on these admissions and Duckworth's testimony the defendants could reasonably be found to have aided and abetted each other in first physically assaulting Duckworth and then jointly damaging his car.

■■ The question before us is essentially one of the credibility to be given the conflicting testimony of the complainant and the two defendants. The credibility of the witnesses and the weight to be accorded contradictory testimony is for the trier of fact. (*People v. Abbott* (1977), 55 Ill. App. 3d 21, 370 N.E.2d 286; *People v. Tomer* (1973), 15 Ill. App. 3d 309, 304 N.E.2d 129.) The trial court could reasonably conclude that the evidence exhibited more than the defendants' mere presence and negative acquiescence. *People v. Washington* (1962), 26 Ill. 2d 207, 186 N.E.2d 259.

■■ Finally, the evidence likewise supports the conclusion that Carraro could be held accountable for the damage resulting from the kick Gray administered to the car shortly before they left the scene. "[O]ne may aid and abet without actively participating in the overt act * * *." (*People v. Clark* (1963), 30 Ill. 2d 67, 72, 195 N.E.2d 157.) The fact-finder may consider a defendant's presence, his absence of disapproval or opposition, as well as other circumstances and conclude that such a person assented and lent his countenance to the commission of the crime by another. (*Clark.*) Here, the defendants' attacks on and intimidation of Duckworth, outside the clinic, were jointly performed and sufficiently demonstrated that Carraro countenanced and aided Gray's overt act.

■■ Defendants next contend that their convictions should be reversed on the ground that their representation by the same counsel denied them their right to effective assistance of counsel. We first note that neither defense counsel nor defendants objected, either before or during trial, that their joint representation was improper or antagonistic to their best interests. This factor is dispositive of the issue, in light of the recent decision of *People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227. *Precup* held that, absent a showing that joint representation constitutes "plain error," failure to object or bring the alleged conflict to the attention of the trial court waives the issue on appeal. (*People v. Precup* (1978), 73 Ill. 2d 7, 18-19, 382 N.E.2d 227; see also *Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173 (representation by a single attorney is not *per se* violative of constitutional guarantee of effective assistance of counsel).) In any event, and despite defendants' efforts to distinguish *Precup*, we conclude that the alleged conflict in question does not rise to the level of "plain error."

We are cognizant of the seemingly unusual direct testimony of the defendants, wherein they admitted causing certain damage to the automobile and apparently incriminated the other. However, a closer review of the record reveals that the defendants' statements and defenses were not antagonistic, but rather were consistent with one another. Carraro's defense was that, although he had damaged the car, he had done so in self-defense. Similarly, any physical contact he had with Duckworth was purportedly in self-defense. Finally, Carraro denied any connection with Gray's act in kicking the vehicle. Gray's testimony in all respects corroborated Carraro's version of these incidents.

On the other hand, Gray denied any involvement in the first episode of the incident. Gray's theory was essentially one of nonaccountability concerning the damage caused by Carraro or the physical altercation between Duckworth and Carraro. Although Gray admitted that, without justification, he had kicked the front of the automobile, defense counsel set forth a defense as to this admission. Gray testified that the damage he

inflicted was minimal, and counsel logically argued, consistent with the nonaccountability theory, that there had been no proof as to the specific amount of damage caused by Gray. Therefore, the evidence would, according to Gray, only support a misdemeanor conviction of damage to property.

We cannot accept, as argued by defendants, that the trial court should have *sua sponte* declared a mistrial and ordered separate trials for the defendants. The conflict between the defendants' respective positions, if in fact there was such a conflict, was not apparent. The defendants' testimony substantially supported each others' theory of nonliability. We conclude, as in *Precup*, that the trial court's failure to intervene here does not amount to "plain error" inasmuch as there was a plausible and sound basis, "for the manner in which defense counsel permitted the trial to develop." *Precup*, 73 Ill. 2d 7, 18, 382 N.E.2d 227, 231.

Finally, both defendants contend that the evidence regarding the amount of damage caused to Duckworth's vehicle was insufficient to establish damages in excess of $150. The record shows that Duckworth testified, without objection, that his insurance company measured the damage at approximately $391. In addition, Duckworth, over objection, testified he paid a repair bill of $391. Aside from the question of the competency or admissibility of this evidence, the defendants assert that it merely demonstrates the "cost of repairs" for the damage and that such a formula is an inappropriate measure of damage to sustain a felony conviction for criminal damage to property. Ill. Rev. Stat. 1977, ch. 38, par. 21—1.

To date, no Illinois court has reached this precise issue. (See generally *People v. Maertz* (1941), 375 Ill. 478, 32 N.E.2d 169; *People v. Brown* (1970), 125 Ill. App. 2d 336, 261 N.E.2d 11.) Although the State contends that *People v. Tidwell* (1975), 33 Ill. App. 3d 232, 338 N.E.2d 113, supports the proposition that cost of repairs is the proper measure of damages under section 21—1, we do not find that case persuasive. In *Tidwell*, the testimony of the victim, that the cost of repairs to her automobile exceeded $200, was not used to convict the defendant of a felony, but was used instead as a basis for ordering restitution.

In support of their position, defendants point to an analogous provision of the Criminal Code (theft of property exceeding $150) (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(e)(3)), wherein it is held that the proper measure of the "value" of property is the fair cash market value, not cost or replacement cost. (*People v. Brown* (1976), 36 Ill. App. 3d 416, 343 N.E.2d 700; see also *People v. Todaro* (1958), 14 Ill. 2d 594, 153 N.E.2d 563.) The defendants contend that, in view of the standard applicable in theft cases, the measure of damages under section 21—1 should be the

diminution in the fair market value of the property caused by the defendants' conduct.

■■ We conclude, however, that the proper measure of damages is the cost of repairs, where the property is repairable. It is apparent that this is the applicable standard in civil cases. (*Kroch's & Brentano's, Inc. v. Barber-Colman Co.* (1973), 16 Ill. App. 3d 412, 306 N.E.2d 522; *Behrens v. W. S. Bills & Sons, Inc.* (1972), 5 Ill. App. 3d 567, 283 N.E.2d 1.) The implicit rationale of this rule is that the cost of repairs is probably the most accurate indication of the amount of damage caused.

Although a different standard would be applied in theft cases, the difference would be analogous to the separate standard applied in civil cases when property is totally destroyed or otherwise converted. (*E.g., Freberg v. Coronet Insurance Co.* (1968), 96 Ill. App. 2d 39, 44, 238 N.E.2d 174; see also *Behrens*, 5 Ill. App. 3d 567, 576, 283 N.E.2d 1 (measure of damages is the value of the property at the time and place of its taking or destruction).) Insofar as there is a reasonable basis for the different civil measures of damage, there is a comparable basis for the different standards of "damage" and "value" in criminal cases.

The defendants contend, nevertheless, that the cost of repairs should not be applied under certain circumstances. For example, they argue that this measure is inappropriate where the cost of repairs exceeds the value of the item itself. We agree that the application of this measure would be unjust under those circumstances. The civil law recognizes an exception to the general rule of damages when the cost of repairs would be uneconomical. Thus, when the cost of repairs exceeds the value of the property before the damage occurred, the proper computation of damages is based on the diminution in value of the property, *i.e.*, the difference between the value of the property before damage and the value after damage occurred. *Janicek v. Szmitke* (1964), 48 Ill. App. 2d 214, 216-17, 198 N.E.2d 694.

We conclude that this exception to the civil rule should be applicable to the criminal setting, with one modification. When the cost of repairs exceeds the value of the property before damage, then the maximum amount chargeable to the defendant's conduct should be the overall value of the item before damage occurred, rather than the diminution in value.[1]

■■ Having reached the above conclusions, we must next determine whether the evidence of the cost of repairs, in this case, was sufficient to sustain the felony convictions. The defendants on appeal argue that the $391 in repairs could very well have exceeded the value of Duckworth's

---

[1] For example, if the cost of repairs to an item were $250, but the value of the item before damage occurred was $200 and the value after $100, the defendant could, nevertheless, be convicted of felony criminal damage to property even though the diminution in value would only be $100.

1970 Plymouth Duster automobile, which had been driven over 100,000 miles. At trial, defense counsel objected to the cost of repairs testimony, but no contradictory evidence was submitted showing either the value of the automobile, or the unreasonableness of the repairs. In light of our holding above, that the cost of repairs is irrelevant to the proof of felony damage to property, if the value of the item itself is less than $150, we are confronted with the question of whether the State's case was fatally defective. In other words, was it incumbent upon the *State* to prove that the "value" of the automobile exceeded $150, before evidence of the cost of repairs could properly be admitted and considered by the trier of fact? We conclude that the State did not have this burden.

Having considered the implications of this decision, we find that it in no way violates the due process requirement that the State has the burden of proving, beyond a reasonable doubt, every essential element of a crime. (*People v. Smith* (1977), 45 Ill. App. 3d 66, 359 N.E.2d 228; *Mullaney v. Wilbur* (1975), 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881.) Here, the State met its burden, and established the element of damage in excess of $150, by the introduction of the evidence of the cost of repairs. This court today has acknowledged that there may be mitigating circumstances, which in fairness dictate the reduction of the degree of the offense. That is, if the value of property damaged is less than $150, the defendant can only be convicted of a misdemeanor, irrespective of whether or not repairs exceed $150. However, the existence of mitigating circumstances does not require that the prosecution, in the first instance, introduce evidence which negatives the existence of mitigation. See LaFave & Scott, Criminal Law §68, at 539 (1972); see also *Mullaney*, 421 U.S. 684, 702 n. 28, 44 L. Ed. 2d 508, 521 n. 28, 95 S. Ct. 1881, 1891 n. 28.

In those cases where circumstances may exist which justify the reduction in the degree of an offense, it is generally held that the defendant has the burden of going forward and introducing "some evidence" creating an issue regarding the mitigating factor. Once the issue is raised, the State then has the burden of negating, beyond a reasonable doubt, the facts of mitigation. LaFave & Scott, Criminal Law §68, at 539-40 (1972); Wright, Federal Practice & Procedure §403, at 67-68 (1969); see also *Mullaney*, 421 U.S. 684, 702-03 n. 28, 30, 44 L. Ed. 2d 508, 521 n. 28, 95 S. Ct. 1881, 1891 n. 28. But see *Patterson v. New York* (1977), 432 U.S. 197, 207, 53 L. Ed. 2d 281, 290, 97 S. Ct. 2319, 2325 (to recognize a mitigating circumstance does not require the State to prove beyond a reasonable doubt its nonexistence in each case even though the fact is put in issue).

■■ The above analysis finds application in Illinois, through a statutory provision concerning affirmative defenses. (Ill. Rev. Stat. 1977, ch. 38, par. 3—2; see also *People v. Warren* (1965), 33 Ill. 2d 168, 173, 210 N.E.2d 507; *People v. Smith* (1978), 71 Ill. 2d 95, 374 N.E.2d 472.) An analogy to the

present situation, based on the policy of that provision is appropriate. Thus, unless the defendant raises the issue of the "value" of the property by "some evidence" it is not incumbent upon the State to prove value. Evidence of cost of repairs in excess of $150 is, therefore, sufficient evidence to sustain a felony conviction under section 21—1, absent contrary proof.

■■ Defendant Carraro contends that the evidence of cost of repairs was incompetent and inadmissible. Defendant, however, failed to preserve the issue for appeal. As to the testimony of the insurance company's estimate, no objection was made and, thus, any error was waived. (*People v. Jenkins* (1974), 20 Ill. App. 3d 727, 315 N.E.2d 269.) Consistent with our conclusion above, that the cost of repairs is the proper measure of damage, defendants' objection to the relevance of Duckworth's testimony, regarding what he paid for the repairs, was properly overruled. See *People v. Mitchell* (1926), 240 Ill. App. 281; McCormick, Evidence §234, at 564 (2d ed. 1972).

Following oral argument, this court ordered supplemental briefs on the issue of trial counsel's conflict of interest arising from his partnership relationship with two special assistant attorneys general. The nature of this conflict is set forth in this court's opinion in *People v. Cross* (1975), 30 Ill. App. 3d 199, 331 N.E.2d 643. Recently, each member of this court has expressed an opinion on the continuing viability of the *Cross* rule. (See *People v. Rogers* (1978), 64 Ill. App. 3d 290, 382 N.E.2d 1236, *appeal pending*, Supreme Court Docket No. 51404; *People v. Fife* (1978), 65 Ill. App. 3d 805, 382 N.E.2d 1234, *appeal pending*, Supreme Court Docket No. 51397; and *People v. Crawford Distributing Co.* (1978), 65 Ill. App. 3d 790, 382 N.E.2d 1223, *certificate of importance to Supreme Court*, Nov. 28, 1978.) On the basis of my views expressed in *Fife*, I would reverse the convictions of both defendants here and Justices Green and Mills would affirm. However, all three of the above cited cases are presently on appeal to the Illinois Supreme Court pursuant to our certification. The proper course to follow here, then, is to include this case in the group of appeals now pending in the supreme court by certification pursuant to Supreme Court Rule 316 (58 Ill. 2d R. 316).

Accordingly, the convictions of both defendants are affirmed and the cause is ordered to be certified to the Illinois Supreme Court pursuant to Rule 316.

Affirmed.

MILLS and GREEN, JJ., concur.