THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROBERT BRUCE BERRY, Defendant-Appellant.

Second District   No. 78-433

Opinion filed August 28, 1979.

Robert Coplan, of Connolly, Oliver, Goddard, Coplan & Close, of Rockford, for appellant.

Daniel Doyle, State's Attorney, of Rockford (David Koski, Assistant State's Attorney, and Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant was convicted of criminal damage to property exceeding $150 in value and was sentenced to two years' probation and fined $1000, besides being ordered to make restitution for the alleged damage.

The defendant at the time of his conviction was operating an Aamco Transmission franchise. Thomas Trotter owned a 1974 Chevrolet van in which the transmission had been replaced by the previous owner of the Aamco shop under a lifetime guarantee, so long as Trotter continued to own the van.

Prior to June 1977, Trotter had brought the van back to the defendant's shop for a couple of rather minor repairs, one being the replacement of a rear seal and the other replacement of a pan gasket. On June 20, 1977, Trotter again returned the van to the defendant's shop because of transmission trouble. It is indicated in the testimony of Joe Close, an employee of the defendant, that previous to June 20, the defendant was aware that Trotter was going to bring the van in for repairs and he and Close had a conversation in which the defendant told Close that the previous owner had mistakenly sold Trotter a lifetime transmission guarantee on a commercial vehicle, whereas he should only have guaranteed it for 90 days, and that Trotter was taking advantage by abusing the transmission, so the defendant "was going to get rid of that truck," by which Close explained the defendant meant he would destroy the vehicle's engine. Accordingly, Close testified, when Trotter brought the van in for repairs, Close and the defendant, by prearrangement, met him "up front" and told Trotter a story about it being necessary to "build up" the transmission with a heavier unit and while they were talking with Trotter another employee, Herb Raprager, slipped a couple of bottles of molasses into the truck, unobserved. Raprager, according to his own testimony, then took the van out for a "test" drive and while out with it he poured the two bottles of molasses into the engine. The vehicle was then returned to Trotter, ostensibly while a heavier transmission was being assembled, and the van was continued in operation for a few hours, whereupon it ceased functioning and the engine was found to be completely worthless. Trotter testified a replacement cost him $1290. Chemical tests by Trotter's insurance company showed the presence of sugar in the oil of the engine.

Raprager testified that he was threatened with the loss of his job by

the defendant if he did not comply with the defendant's order to put the molasses in the Trotter van. Close apparently never actually participated in any specific damage to a customer's car. However, he was aware both of the Trotter incident and a previous one involving a car owned by David Lee Harold, who also had a lifetime transmission guarantee from the previous owner. Close testified that he quarreled with the defendant about "damage reports" which the defendant wanted him to exaggerate. Close and the defendant continued to quarrel, Close testified, after the Trotter incident and on August 14, 1977, the defendant fired Close and Raprager. Shortly afterward a criminal complaint was filed against the defendant as the result of information furnished to the police by Close and Raprager regarding the incidents of criminal damage described herein and other incidents indicating fraudulent misrepresentation of damage to the cars of other customers. The defendant was only actually charged with and tried, however, for criminal damage in excess of $150 to the Trotter van.

Based on information furnished in an affidavit by Raprager, David Lee Harold, whose Buick Regal automobile was also subject to a lifetime transmission guarantee, was called as a witness by the State and testified that his Buick Regal's engine had been in the defendant's shop for transmission work and shortly afterward the engine would not turn over and had to be junked. Herb Raprager testified he had, at the insistence of the defendant, poured molasses into Harold's car to destroy the engine and keep Harold from coming back for repairs under the warranty. This testimony of Raprager was objected to by defense counsel on the ground that it was evidence of another crime for which the defendant was not on trial and testimony was elicited solely for the purpose of prejudicing the defendant. After a colloquy with the court, the objection was overruled on the ground that the testimony was submitted for the purpose of showing purpose and design and was therefore a proper exception to the general rule precluding evidence of another crime for which the defendant was not on trial.

The defendant raises three points in this appeal: (1) That the evidence was insufficient to establish that the property destroyed had a value in excess of $150, rendering his conviction on that charge invalid; (2) that the trial court committed reversible error in allowing into evidence certain testimony regarding a prior, separate and distinct crime and (3) that the judgment of the court was contrary to the manifest weight of the evidence because the State's principal witnesses were not credible.

■■ With regard to the value of the destroyed motor, the replacement cost was established as $1290 and while replacement cost has not been generally taken as the criterion of the value of destroyed property, in those cases where a part of the property is completely destroyed, the cost

of replacing that part is at least an indication of the amount of criminal damage committed. Thus, even if we accept the defendant's contention that the proper measure of the "value" of the property was the fair cash value, not the replacement cost, the diminution in the fair cash market value of the van, by reason of the destruction of its motor, is obviously more than $150, considering that the van was useless without a motor and a motor would cost over $1200. In any event, however, we are inclined to agree with the reasoning of the Fourth Appellate District in the case of *People v. Carraro* (1979), 67 Ill. App. 3d 81, 88, where the court said, regarding the value of criminally damaged property:

> "We conclude, however, that the proper measure of damages is the cost of repairs, where the property is repairable. It is apparent that this is the applicable standard in civil cases. [Citations.] The implicit rationale of this rule is that the cost of repairs is probably the most accurate indication of the amount of damage caused."

We are not talking here about recoverable damages, but rather, the jurisdictional amount of damage committed. We think it is obvious that the destruction of the motor of an automobile renders it worthless as an automobile and damages it to the extent of the cost necessary to restore its mobility—in this case, $1290, according to the evidence. The defendant's objection to the replacement cost of the motor as establishing that the damage exceeded $150, therefore, seems more theoretical than real. We see little merit in this argument in the circumstances of this case.

■■ ■ The defendant contends that the trial court committed reversible error in allowing into evidence certain testimony regarding the criminal damage done to the automobile of David Lee Harold, allegedly at the instance of the defendant. The defendant properly invokes the general rule that evidence of other crimes of the accused, offered in support of the offense presently charged, is prejudicial and impermissible, especially where it tends merely to show criminal propensity. However, there are well defined exceptions to this general rule, as was pointed out in *People v. McDonald* (1975), 62 Ill. 2d 448, 455, where the court said:

> "It is, of course, generally true that evidence of extra-indictment offenses, that is, evidence of crimes other than the one for which the accused is being tried, is not admissible, but there are situations of exception. Evidence which tends to prove a fact in issue is admissible though it may be evidence showing that the accused has committed a crime other than the one for which he is being tried, and evidence which goes to show motive, intent, identity, absence of mistake or *modus operandi* is admissible though it may show the commission of a separate offense. [Citations.] In fact it has been broadly held that evidence of other offenses is admissible if

relevant for any purpose other than to show propensity to commit a crime."

■■ In the case before us we think the evidence to the effect that shortly before the Trotter damage the defendant had used exactly the same drastic method of destroying an automobile which was under the warranty of his shop—that is, inducing the owner to believe he was going to repair the transmission and then, while the vehicle was in his possession, secretly pouring molasses into it to destroy the engine—as he had used in the Trotter case. This devious and vicious method of getting rid of a bothersome responsibility may, we think, be said to reflect a peculiar *modus operandi* or scheme, proof of which is allowable even though it may tend to prove the commission of another offense. We believe, therefore, that the trial court was correct in overruling the defendant's objection to the testimony of a previous, almost identical, incident, as proving a deliberate design or method of operation on the defendant's part.

■■ Lastly, the defendant argues that the evidence against him was not beyond a reasonable doubt, because it was based on the testimony of an accomplice and an informer, both of whom expected to and did receive special consideration in connection with criminal offenses pending against them. It seems clear from the testimony that Raprager, who actually poured the molasses into the engine of the Trotter car, as well as the Harold car, was guilty as an accomplice. And, Close, who admitted he knew it was going to be done and stood by and watched was more or less an informer for the police. Moreover, by their own admission, Raprager and Close had been charged with burglary, and the charge was apparently being held in abeyance pending their testimony at the defendant's trial, as is indicated by the numerous continuances of the burglary charge. Close testified he expected that he would receive "special consideration," although it was not clear whether this was in connection with the criminal damage to the Trotter van or as to the burglary charge. Moreover, Close was admittedly extremely hostile to the defendant. In addition, he had hurt his back previous to being fired by the defendant and had made a claim against the defendant for compensation, which the defendant refused to pay. This was another source of friction between Close and the defendant. Considering these circumstances, the testimony of the witnesses Close and Raprager was subject to considerable scrutiny. Nevertheless, we must agree with the conclusion of the trial judge, who heard all of the testimony and observed the witnesses first hand, that while Close, due to his personal hostility to the defendant and his connections with the police, had impaired credibility, there was no reason the judge could find or any advanced by the defense as to why

Raprager would deliberately damage the automobile of a customer who was personally unknown to him, except under pressure from the defendant. His act in doing so does not seem to logically admit of any explanation than that it was a scheme concocted by the defendant for his imagined business advantage and which he induced Raprager to perform by threats of otherwise losing his job. Like the trial judge, we cannot shake this conclusion and therefore we believe the evidence of the defendant's guilt does not admit of any reasonable doubt. The defendant contends this way of looking at the evidence places the conviction on a negative basis. We do not think so—it merely overcomes the supposed lack of credibility of Raprager, based on his tenuous position as an accomplice, and as a person subject to police pressure on another charge. While Raprager might lie about what he did later on because of certain pressures, at the time the act was done, there was apparently no motive for him to do it except pressure from the defendant. Regardless of Raprager's later involvement with the police, there is no doubt that molasses was poured into the Trotter van and at that time only the defendant had a motive (however twisted) for doing so. We accept the trial court's judgment as to the truth of Raprager's testimony and to his conclusion as to its significance in pointing to the defendant's guilt.

The judgment of the circuit court of Winnebago County is affirmed.

Judgment affirmed.

SEIDENFELD and WOODWARD, JJ., concur.