**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210253-U

Order filed May 24, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-21-0253 Circuit No. 13-CF-958 |
| RICKIE BROWNSON, | ) ) ) | Honorable Carmen J. Goodman, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ALBRECHT delivered the judgment of the court.
Presiding Justice Holdridge and Justice Brennan concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  (1) Defendant received an adequate preliminary *Krankel* inquiry, (2) the State proved defendant guilty beyond a reasonable doubt, (3) defendant did not receive ineffective assistance of counsel, and (4) the court did not err in denying defendant's motion for a new trial.

¶ 2     After a bench trial, defendant, Rickie Brownson, was found guilty of three counts of aggravated criminal sexual assault (720 ILCS 5/11-1.30(b)(i) (West 2012)) and two counts of criminal sexual assault (720 ILCS 5/11-1.20(a)(3) (West 2012)). Defendant appeals, arguing that: (1) he did not receive a sufficient preliminary *Krankel* inquiry; (2) he was not proven guilty

of the offenses beyond a reasonable doubt; (3) he was deprived of effective assistance of trial counsel; and (4) the circuit court erred in denying defendant's motion for a new trial based upon newly discovered evidence without an evidentiary hearing. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      In May 2013, defendant, who was 16 years old, was arrested and charged as an adult for several sex offenses for allegedly molesting his three younger triplet half-sisters, Doe 1, Doe 2, and Doe 3. The offenses allegedly occurred between certain specified dates in July 2012 and March 2013 when the girls were 8 years old. The charging instrument alleged, among other things, that defendant had placed his penis into the vagina of all three girls and into the anus of two of the three girls.

¶ 5      In July 2014, prior to trial, the State sought leave to admit certain hearsay statements made by Jaclyn Lundquist, a forensic interviewer for the Will County Child Advocacy Center, and Diamond Brownson, defendant's half-sister, pursuant to section 115-10 of the Code of Criminal Procedure of 1963. 725 ILCS 5/115-10 (West 2012). Following a hearing, the court found that the recordings of Lundquist's victim sensitive interviews (VSIs) with the triplets could be played at trial and that Diamond could testify. The court also ruled that certain hearsay statements about the sexual assaults that the girls had made to a doctor at a medical examination that took place shortly after the incidents became known to authorities were admissible pursuant to section 115-13 of the Code. 725 ILCS 5/115-13 (West 2012).

¶ 6      Defendant proceeded to a jury trial in November 2014. Diamond testified about what the girls had told her and about an admission defendant had made at a meeting with the family's pastor. A doctor testified about what the girls had said during their medical examinations.

¶ 7       The triplets' VSIs were admitted into evidence and played for the jury. Each was interviewed separately by Lundquist. During the interviews, Doe 1 stated that defendant did "something bad" to all three triplets at nighttime. He put his penis in her vagina and "ma[de] it wet." She stated that it felt big and squishy and would go all the way in. Defendant would occasionally put his penis in her butt, and she saw blood come out of her butt when she used the toilet. These incidents occurred at their former Bolingbrook residence and their Plainfield residence in the triplets' room or sometimes in defendant's room.

¶ 8       Doe 2 stated that defendant put his penis inside the triplets' vagina and butt at the Bolingbrook residence. He would take off their clothes and his penis would "go inside." She described it as really painful, "hurt like pepper," and felt squishy and nasty. Defendant also touched her butt and private parts with his hands. Defendant kissed her on the mouth and cheeks while using his tongue. and it felt "like smush." She tried to get away from defendant but he "kept pulling her." She also tried to help her sisters by pulling them away from him. Doe 2 only told Diamond because she was scared to tell the rest of the family. She stated that Diamond was nice and a good sister who helped the triplets with their homework.

¶ 9       Doe 3 stated that defendant put his penis inside her vagina and butt. She stated that she felt pain when his penis touched her, that "it was big and it hurt a lot," and that it "felt wet." During the incidents, she saw blood and defendant would "spit on it so no blood would come." She also saw blood in the toilet after going to the bathroom. She told him to stop but he said no. These incidents occurred at the Bolingbrook residence and Plainfield residence in the triplets' room or sometimes in defendant's room. She also saw defendant touch her sisters while she pretended to be asleep. She stated that Diamond helped them because she was a good sister.

¶ 10       However, while testifying in open court, the triplets stated that defendant never touched their private areas. The triplets stated that Diamond told them to lie and that she threatened them. Doe 2 and Doe 3 stated that they were scared of Diamond and that defendant was a good brother.

¶ 11       Several of the girls' family members and the family's pastor testified and denied that the girls had made any statements about the sexual assaults occurring, that a family meeting took place regarding the matter, and that defendant made any type of admission or confession during that meeting.

¶ 12       At the conclusion of the trial, the jury found defendant guilty of three counts of aggravated criminal sexual assault and two counts of criminal sexual assault. Following a sentencing hearing, the court sentenced defendant to eight years' imprisonment for each of the aggravated criminal sexual assault convictions and seven years' imprisonment for each criminal sexual assault conviction. The court further ordered that all prison terms were to be served consecutively.

¶ 13       Defendant appealed, and this court vacated defendant's convictions and remanded for a new trial because the circuit court failed to properly admonish the jury pursuant to Illinois Supreme Court Rule 431(b) (eff. Jul. 1, 2012) during the jury selection process. *People v. Brownson*, 2018 IL App (3d) 150328-U, ¶ 42.

¶ 14       On remand, defendant waived jury trial and proceeded to bench trial. Defendant, who obtained private counsel for the first trial, received the public defender on remand. During many of the status or pretrial hearings in the case following remand, defendant complained to the court about his attorneys and that they were not coming to see him at the jail. It was apparent during those conversations that defendant did not agree with the defense that his attorneys had selected for the retrial.

4

¶ 15        The bench trial occurred in March 2021. At trial, the girls were again called to testify for the State. They each testified that they did not remember the prior incidents of sexual assault or making the portion of the prior statements where they had indicated that the sexual assaults had occurred.

¶ 16        Lundquist testified as to how the VSIs were conducted. She described her purpose in interviewing them as a way to obtain true statements from minor victims in a non-leading way. She also described the method she used in conducting the interviews. The VSIs were then admitted into evidence and played for the court.

¶ 17        Diamond testified that she heard grunting in the girls' bedroom one night in December 2012. She tried to open the door, but it was locked. She asked her sister Annet about the locked door, and Annet told her that defendant slept in the room with the triplets. The next day, Diamond asked the triplets about noises coming from their room. The triplets eventually told her about defendant abusing them and threatening to beat them if they told anyone. She further testified that when confronted by their parents and pastor, defendant admitted to putting his fingers inside the girls and apologized. He promised it would not happen again.

¶ 18        Diamond testified that the girls came to her in January 2013, and told her that defendant started touching them again. When she confronted defendant, he and his father punched her, causing a black eye. She stated that she did report the triplets' allegations to the police because she was afraid they would be sent to foster care and be separated. She believed she had a good relationship with the girls.

¶ 19        Dr. Suchinta Hakim testified that she examined the girls after the allegations were made. She stated that two of the girls made statements to her regarding defendant putting his hand and his private part in their private parts.

¶ 20        Neither the State nor the defense called any of the family witnesses that testified at the first trial, except for the father of all of the children. At the conclusion of the bench trial, the court found defendant guilty of three counts of aggravated criminal sexual assault and two counts of criminal sexual assault.

¶ 21        Following the trial, defendant filed a *pro se* motion alleging ineffective assistance of counsel. He claimed in the motion that his trial attorneys were ineffective in that they failed to meet with defendant to go over discovery and evidence, introduce newly discovered evidence at the bench trial, and call witnesses on defendant's behalf at the bench trial. Defendant did not specify in his motion the nature of the newly discovered evidence. He later filed a second motion requesting a *Krankel* hearing on his claim of ineffective assistance. In this motion, defendant stated further that trial counsel failed to call and investigate the girls' mother, pastor, and other family members who would have taken the witness stand, testified for the defense, and contradicted the girls' testimony. The circuit court conducted a brief inquiry into the factual basis of the motions and asked defendant about his allegation of newly discovered evidence. Defendant indicated during that questioning that the evidence pertained to the girls' counseling and that he thought his attorneys were going to introduce that evidence at trial. The circuit court did not question defendant about his allegations regarding the family witnesses and did not ask defendant's attorneys any questions. The court denied defendant's motions, finding that there was not "enough" to proceed further.

¶ 22        Defendant's attorneys filed a motion to reconsider the guilty verdicts or for new trial, which was subsequently amended. In the amended motion, defendant's attorneys claimed that a new trial was warranted based upon newly discovered evidence—statements that the girls had made to the probation officer who was preparing defendant's presentence investigation report

(PSI) indicating that the sexual abuse never occurred. The circuit court denied defendant's attorneys' motion without holding an evidentiary hearing.

¶ 23       Following a sentencing hearing, the court sentenced defendant to 6 years' imprisonment for each aggravated criminal sexual assault conviction and 4 years' imprisonment for each criminal sexual assault conviction for an aggregate term of 26 years, the minimum prison sentence available.

¶ 24       On appeal, this court remanded the matter to the circuit court to hold a preliminary *Krankel* inquiry. We retained jurisdiction over all other matters, pending the results of the preliminary inquiry.

¶ 25       On remand, the court held a preliminary *Krankel* inquiry and asked defendant to elaborate on the claims made in his motion. Defendant stated his attorneys were ineffective because they did not call several witnesses that testified during the jury trial, including the pastor and the triplets' mother, who would have been helpful to his defense during the bench trial. He also argued that his attorneys failed to object to certain hearsay statements that Diamond made regarding what Annet told her about defendant sleeping in the triplets' room and that Annet should have testified instead. The court also allowed defendant's trial attorneys to respond to his allegations. His attorneys explained their reasoning for not calling those witnesses from the first trial. They stated that the decision not to call these witnesses was because they did not believe the testimony would have changed the outcome of the trial and that it was part of their trial strategy to highlight the inconsistencies in the triplets' testimonies compared to the VSIs.

¶ 26       After the hearing, the circuit court concluded that, upon review of defendant's motion and the statements made at the preliminary inquiry, no other action was necessary. The matter has now returned to this court for further rulings.

¶ 27                                    II. ANALYSIS

¶ 28                            A. Preliminary *Krankel* Inquiry

¶ 29        First, defendant's appeal argued that he was entitled to receive a *Krankel* hearing based

on the allegations he made in his posttrial motions. On remand, we ordered the circuit court to

hold a preliminary *Krankel* inquiry. Upon review of the records pertaining to our remand, we

find that defendant has received an adequate preliminary inquiry.

¶ 30        Through *People v. Krankel*, 102 Ill. 2d 181 (1984), and its progeny, our supreme court

has developed a procedural framework for the resolution of posttrial claims of ineffective

assistance of counsel. When a defendant raises, as a self-represented litigant, an ineffective

assistance of counsel claim after trial, the circuit court must conduct a preliminary *Krankel*

inquiry to determine whether new counsel should be appointed to address the issue. *People v.*

*Jolly*, 2014 IL 117142, ¶ 29. The purpose of the preliminary inquiry is to determine the

underlying factual basis of the claims and to provide defendant an opportunity to argue his

claims to the court. *People v. Ayres*, 2017 IL 120071, ¶ 24. New counsel is only appointed if the

allegations show a possibility that counsel neglected the case. *People v. Moore*, 207 Ill. 2d 68, 78

(2003).

¶ 31        At a preliminary *Krankel* inquiry, the circuit court may consider the legal merit of the

claim as well as the factual basis. *People v. Roddis*, 2020 IL 124352, ¶ 61. "[S]ome interchange

between the trial court and trial counsel regarding the facts and circumstances surrounding the

allegedly ineffective representation is *** usually necessary in assessing what further action, if

any, is warranted on a defendant's claim." *Moore*, 207 Ill. 2d at 78. The court may base its

decision on "its knowledge of defense counsel's performance at trial and the insufficiency of the

defendant's allegations on their face." *Id.* at 79. A court's determination that a defendant did not

8

demonstrate a possible neglect of the case will not be reversed unless such decision is manifestly erroneous. *People v. Maya*, 2019 IL App (3d) 180275, ¶ 17. Manifest error occurs when such error is "clearly evident, plain, and indisputable." *People v. Ruiz*, 177 Ill. 2d 368, 384-85 (1997).

¶ 32 In the instant case, the court conducted a proper preliminary inquiry and determined that defendant's claims did not warrant further proceedings. The court engaged both defendant and counsel and gave each the opportunity to explain their respective positions. Defendant claimed that counsel did not properly investigate his defense and did not call witnesses that could have helped discredit the State's witnesses. Counsel rebutted these claims when he told the court the defense team made strategic decisions regarding witnesses and potential testimony after a thorough review of the record from the first trial. From this, the court determined that counsel's choices in this regard were not indicative of ineffective assistance or possible neglect. Ultimately, the court's finding that counsel was more credible and further inquiry was unnecessary is not manifestly erroneous. We cannot say that it was indisputable that defendant demonstrated possible neglect.

¶ 33 Considering the efforts made by the court to adequately conduct the preliminary *Krankel* inquiry and its thorough review of the facts and statements made by both counsel and defendant, we find no manifest error in the court's conclusion. Accordingly, there is no need to remand for further *Krankel* proceedings.

¶ 34 B. Sufficiency of the Evidence

¶ 35 Next, defendant argues that he was not proven guilty of the offenses beyond a reasonable doubt. Defendant requests that we reverse his convictions outright.

¶ 36 In a challenge to the sufficiency of the evidence, we will not retry defendant. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). " '[T]he relevant question is whether, after viewing the

9

evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). All reasonable inferences in favor of the State are allowed but unreasonable or speculative inferences are not permissible. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). When evaluating the sufficiency of the evidence, we will defer to the trier of fact on matters of witness credibility, or the weight afforded to each witness's testimony. *People v. Carraro*, 67 Ill. App. 3d 81, 85 (1979).

¶ 37 It is the trier of fact's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. See *People v. Jackson*, 232 Ill. 2d 246, 281 (2009). This same standard of review is applied by the reviewing court regardless of whether the evidence is direct or circumstantial, or whether defendant received a bench or a jury trial, and circumstantial evidence meeting that standard is sufficient to sustain a criminal conviction. *Id.*; *People v. Kotlarz*, 193 Ill. 2d 272, 298 (2000). A reviewing court will not reverse a defendant's conviction based on insufficient evidence unless the evidence is so improbable, unsatisfactory, or inconclusive that it leaves a reasonable doubt of the defendant's guilt. *People v. Murray*, 2019 IL 123289, ¶ 19.

¶ 38 As charged in this case, to convict defendant of aggravated criminal sexual assault, the State was required to show that defendant was under 17 years of age and committed an act of sexual penetration on a victim who was under 9 years of age. 720 ILCS 5/11-1.30(b)(i). To convict defendant of criminal sexual assault, the State had to prove that defendant committed an act of sexual penetration and was a family member of the victim, who was under 18 years of age. 720 ILCS 5/11-1.20(a)(3). "Sexual penetration" includes any contact or intrusion between the sex organ or anus of one person and the sex organ of another. 720 ILCS 5/11-0.1 (West 2012).

10

The ages of defendant and the girls at the time the offenses occurred are undisputed. Therefore, the only issue is whether the State, through the testimony presented at trial and the video recorded VSIs, proved that defendant committed an act of sexual penetration.

¶ 39    Defendant first argues that the State did not prove him guilty beyond a reasonable doubt because no physical evidence was presented. However, "it is well settled that a lack of physical evidence does not establish that a sexual assault did not occur." *People v. Delgado*, 376 Ill. App. 3d 307, 311 (2007). We will therefore not reverse simply because of a lack of physical evidence but will instead look to the other evidence presented at trial.

¶ 40    Here, when viewed in the light most favorable to the State, the evidence was sufficient to prove defendant guilty beyond a reasonable doubt. While the triplets' claims in their VSIs were different than their testimony at trial, "[t]he testimony of a single witness is sufficient to convict if the testimony is positive and credible." *People v. Gray*, 2017 IL 120958, ¶ 36. Further, although the triplets claimed at trial that they did not remember the incidents of sexual assault, their statements to Lundquist, Hakim, and Diamond were clear and specific that defendant had placed his penis inside their vaginas and in two of the girls' anuses. Moreover, a conviction will not be reversed simply because the evidence is contradictory or a defendant contends it is not credible. *Id.* It is the court's function to resolve any inconsistencies in the evidence and assess credibility. *Id.* While the girls did not detail the offenses in their testimonies at trial, they also did not contradict or deny the statements made at the VSIs. We do not find that the inconsistencies between the girls' testimony and their statements in their VSIs compel the conclusion that no reasonable person could have accepted the evidence beyond a reasonable doubt. See *id.* Further, their statements at trial were not "improbable, unconvincing [or] contrary to human experience" so as to create a reasonable doubt of defendant's guilt, especially in light of the clear statements

11

at the VSIs and Diamond's and Dr. Hakim's testimony. *People v. Marion*, 2015 IL App (1st) 131011, ¶ 45.

¶ 41      It was for the trial court, as the trier of fact, to weigh the girls' prior statements and their current testimony on the witness stand, along with the other evidence, and to determine which version of events to believe. See *People v. Jimerson*, 127 Ill. 2d 12, 43 (1989). The court noted the differences in testimony and VSIs and chose to find the statements made at the VSIs, which were corroborated by Diamond and Dr. Hakim, more credible. Here, from our review of the record, the court reasonably determined that the triplets' allegations at the VSIs were credible. Accordingly, when viewed in the light most favorable to the State, the evidence presented at the bench trial was sufficient to prove defendant guilty beyond a reasonable doubt. See *Collins*, 106 Ill. 2d at 261; *Jackson*, 232 Ill. 2d at 280.

¶ 42                                    C. Ineffective Assistance of Counsel

¶ 43      Defendant next argues that he was deprived of effective assistance of trial counsel. Defendant asserts that his trial attorneys' performance was deficient because they failed to call to testify at the bench trial certain family witnesses who had testified at defendant's first trial and had contradicted Diamond's testimony and established that Diamond bore animosity toward defendant, and they failed to object to the inadmissible hearsay testimony of Diamond that Annet had told her defendant slept in the triplets' bedroom.

¶ 44      A claim of ineffective assistance of counsel is analyzed under the two-pronged performance prejudice test established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). See *People v. Patterson*, 217 Ill. 2d 407, 438 (2005). To prevail on such a claim, "the defendant must demonstrate that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's

12

unprofessional errors, the result of the proceeding would have been different.' " *People v. Petrenko*, 237 Ill. 2d 490, 496-97 (2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). The court must consider defense counsel's performance as a whole and not merely focus on isolated incidents of conduct. See *People v. Cloyd*, 152 Ill. App. 3d 50, 57 (1987). A strong presumption exists that defense counsel's conduct was within the wide range of reasonable professional assistance and that all decisions were made in the exercise of reasonable professional judgment. *Id.*; *People v. Martin*, 236 Ill. App. 3d 112, 121 (1992).

¶ 45        Actions that are considered matters of trial strategy are accorded great deference by the court and "are generally immune from claims of ineffective assistance of counsel." *People v. West*, 187 Ill. 2d 418, 432 (1999). Further, a defendant is entitled to competent representation, not perfect representation. *People v. Tucker*, 2017 IL App (5th) 130576, ¶ 26. "[E]ven if defense counsel makes a mistake in trial strategy or tactics or an error in judgment, this will not render representation constitutionally defective." *People v. Perry*, 224 Ill. 2d 312, 355 (2007). In such cases where a defendant argues ineffective assistance due to mistakes in trial strategy, he must overcome the strong presumption that counsel's action constituted reasonable strategy. *People v. Clendenin*, 238 Ill. 2d 302, 317 (2010). A reviewing court evaluates counsel's conduct under the totality of the circumstances. *Tucker*, 2017 IL App (5th) 130576, ¶ 54.

¶ 46        The record before us in the present case shows that defendant's attorneys requested the transcripts from the previous trial so that they could review the testimony that was presented and had selected a defense theory with which defendant was largely in disagreement. Further, the testimony defendant argues his attorneys should have elicited to discredit Diamond's testimony was a strategy that was utilized in the first trial and failed. Defendant's attorneys further explained on remand that the choice not to call those witnesses on the second trial was for this

13

very reason. This decision was clearly reasonable trial strategy that cannot now be challenged through an ineffective assistance of counsel claim. We therefore find that, under the facts of the present case, defendant's attorneys did not perform deficiently at the defendant's bench trial. Having so determined, we need not consider whether defendant was prejudiced by any alleged deficient performance. See *People v. Graham*, 206 Ill. 2d 465, 476 (2003) (finding that both prongs of a *Strickland* claim must be proven and if a claim fails under either prong the court need not determine whether the other prong also fails).

¶ 47    As for Diamond's hearsay statement that Annet had told her defendant was in the girls' bedroom, we agree with the State that the statement was largely insignificant when compared to the video interviews that the girls had given shortly after the abuse came to light. Defendant therefore cannot prove prejudice regarding counsels' failure to object to Diamond's hearsay testimony because that alone would not have changed the result of the trial. See *id.*

¶ 48                             D. Motion for New Trial

¶ 49    Finally, defendant argues that the circuit court erred in denying his motion for new trial based on newly discovered evidence, namely the girls' recantation. He argues that because the recantations he attached to the motion may be considered new evidence and that the only evidence against him consisted of the girls' VSI statements that they recanted, the circuit court should have granted his motion for a new trial.

¶ 50    A new trial is generally warranted based on newly discovered evidence where: (1) such evidence was discovered after the trial; (2) it is of such character that it could not have been discovered prior to the trial through due diligence; (3) it is material to the issue; and (4) it is of such conclusive character that it will probably change the result on retrial. *People v. Williams*, 295 Ill. App. 3d 456, 462 (1998). Motions for new trial based upon newly discovered evidence

14

are generally not favored and are subject to the closest scrutiny. *People v. Williams*, 2020 IL App (1st) 172118, ¶ 33. We review the court's denial of a motion for a new trial for an abuse of discretion. *Id.* The circuit court may deny a motion for a new trial based upon newly discovered evidence without holding a full evidentiary hearing, provided the decision is not an abuse of discretion. *People v. Smith*, 177 Ill. 2d 53, 82 (1997).

¶ 51　　　　Much of defendant's argument concerns the girls' recantations in the form of statements made during a phone call with a probation officer preparing defendant's PSI. Our supreme court has held that recantations are inherently unreliable, and the court will not grant a new trial on this basis except in extraordinary circumstances. *People v. Steidl*, 142 Ill. 2d 204, 253-54 (1991). Because recantation testimony is so suspect, it is treated with caution and not sufficient to require a new trial unless defendant can prove the witness's earlier testimony was perjured. *Id*.

¶ 52　　　　Here, the circuit court was presented with the girls' videotaped statements describing the sexual assaults in detail and their trial testimony, claiming a lack of memory as to the sexual assaults. The statements that the girls made to the probation officer as part of the PSI were not made under oath and do not discredit the videotaped statements. The statements made to the probation officer that nothing happened are further weakened by their statements during the phone call that they did not want to go back to court and that the court process caused anxiety. Statements regarding the abuse had been made by the girls to Diamond and to the doctor. Diamond also described at the bench trial a family meeting where defendant admitted what he had done.

¶ 53　　　　The triplets' conversations with the probation officer do not constitute extraordinary circumstances as anticipated by our supreme court. See *Steidl*, 142 Ill. 2d at 254. Having viewed all of that evidence at defendant's bench trial, we find that the circuit court did not err in denying

15

defendant's motion for new trial based upon newly discovered evidence without holding an evidentiary hearing. See *Williams*, 2020 IL App (1st) 172118, ¶ 33.

¶ 54                                  III. CONCLUSION

¶ 55           The judgment of the circuit court of Will County is affirmed.

¶ 56           Affirmed.